UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL WEST,

       Plaintiff,

v.                        Case No.: 8:18-cv-44-T-33AEP

TAMPA HOUSING AUTHORITY
DEVELOPMENT CORPORATION,

       Defendant.
_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Tampa Housing Authority Development Corporation's Motion for Summary Judgment (Doc. # 37), filed on September 24, 2018. Plaintiff Michael West responded on October 18, 2018. (Doc. # 39). Tampa Housing Authority replied on October 26, 2018. (Doc. # 41). For the reasons that follow, the Motion is granted.

## I.   Background

West began working for Tampa Housing Authority in 1988, as a Maintenance Helper. (Doc. # 36-1 at 27:5-10). Eventually, West was re-classified as a Maintenance Mechanic I. (Id. at 27:11-13). The official job description for the Maintenance Mechanic I position read as follows:

A. Perform general grounds keeping tasks, clean buildings and set-up for events

1. Clean grounds of paper and debris using pick-up stick, rake or other appropriate tools
2. Perform a wide variety of seasonal tasks such as, blowing, raking and bagging leaves, clean paths after snow or ice storms, remove dead limbs and vegetation, and weed flower beds; as needed
3. Place bags of trash and leaves in designated locations for pick-up
4. Clean buildings to include sweeping, dusting, mopping, emptying trash containers, vacuuming, waxing and buffing, and related tasks to keep space clean and neat
5. Keep bathrooms and other spaces stocked with paper products and soap
6. Set up rooms for events and take down set up after events are over
7. Observe conditions and report any unusual conditions, such as presence of strangers, disagreements among residents, or other situations
8. Inspect hallways and common places, eliminate obstacles to free passage and assure that there is adequate lighting
9. Pressure wash outside of buildings, walks, clean debris from roofs, as needed
10. Paint and repair outside fences, benches, grills, etc. as needed

B. Assist with general maintenance tasks

1. Replace furnace filters and light bulbs
2. Assist in the repair or installation of building fixtures such as windows, doors, roofs, cabinets, walls, partitions, counter tops, tile, smoke detectors, ceilings and floors
3. Assist with minor electrical maintenance such as replacement of wall sockets and switches, lights, and fans
4. Assist with routine plumbing work such as unstopping commodes and garbage disposals, repairing and replacing faucets, commodes, sinks and bath accessories
5. Perform or assist with performing a variety of painting tasks
6. Perform routine and preventive maintenance

> 7. Receive and review written materials such as work orders
> 8. Assist in regular inspection of units to determine maintenance needs
> 9. Assist in preparing units for occupancy by removing trash and other items, and cleaning in accordance with established procedures
> 10. Regularly conduct inventory of equipment, tools, parts, and supply of materials

(Doc. # 36-2).

West acknowledged in his deposition that the job description was accurate regarding the types of duties he performed and that the job could not be performed from a desk. (Doc. # 36-1 at 28:8-23, 30:7-17, 64:23-65:17). So, as the Director of Human Resources and Compliance for Tampa Housing Authority, Kenneth Christie, explained: "The position of Maintenance Mechanic I is physically demanding, and physical ability, strength, dexterity, and mobility are essential functions of the job." (Doc. # 36-8 at ¶ 4).

While working on March 12, 2016, West sprained his ankle while stepping off of a curb. (Doc. # 36-1 at 35:4-16). Then, on March 14, 2016, West reported his injury to Tampa Housing Authority's Human Resources department. (Id. at 36:18-20). HR gave West paperwork related to his injury to fill out and referred him to a doctor. (Id. at 36:18-37:20; Doc. # 36-4 at 1). And the workers' compensation process was initiated at that time. (Doc. # 36-3; Doc. # 36-4).

Additionally, West was granted twelve weeks of Family and Medical Leave Act ("FMLA") leave. (Doc. # 36-6). West acknowledged that he knew he had to return to work twelve weeks later, which was June 6, 2016. (Doc. # 36-1 at 38:12-18).

West sought medical treatment during his FMLA leave. West's doctor, Dr. Herscovici, sent updates about his condition occasionally to Tampa Housing Authority during West's FMLA leave. (Doc. # 36-3). On March 28, 2016, the doctor reported that West could only return to work if West performed certain activities in a sedentary position. (Id. at 2). These activities included carrying, climbing, lifting from floor to the waist, lifting from the waist to overhead, pulling, pushing, squatting, and twisting. (Id.). Again, on April 11, 2016, the doctor imposed a restriction that West could only engage in carrying, climbing, lifting from floor to the waist, lifting from the waist to overhead, pulling, or pushing if he was sedentary. (Id. at 4).

On May 27, 2016, Christie sent West a letter explaining that West's FMLA leave was ending on June 3, so West was expected to return to work on June 6, 2016. (Doc. # 36-6). The letter warned that "[i]f [West did] not return to work at the end of [his] medical leave of absence, [he] will have

4

voluntarily terminated [his] employment." (Id.). Additionally, the letter advised West that he could "request a medical leave of absence pending approval from [his] supervisor." (Id.).

In an attempt to secure an extended leave, West sent a leave request form to Tampa Housing Authority. (Doc. # 36-8 at 5). But West did not provide a date on which the extended leave would end. (Id.; Doc. # 36-1 at 58:1-15). For that reason, Tampa Housing Authority considered the request "incomplete and non-compliant," so it "was not approved." (Doc. # 36-8 at ¶ 8).

West did not return to work on June 6, 2018. (Id. at ¶ 9). Then, on June 10, 2016, Tampa Housing Authority sent West a letter terminating his employment effective June 6 because of West's "inability to return to work at the end of [his] FMLA medical leave of absence." (Doc. # 36-5; Doc. # 36-8 at ¶ 9).

West agreed that "there was no way that [he] could perform [his] job of maintenance mechanic sitting down and not doing the lifting and bending and pulling and pushing that [his] job required." (Doc. # 36-1 at 67:1-5). When asked how he thought Tampa Housing Authority should have accommodated him, West stated:

> I thought they could have given me — let me order
> supplies out of the stockroom. I think they could
> have had me print out work orders up front with the
> ladies.

(Id. at 67:12-15). Essentially, West wanted "a temporary light-duty office job that would have allowed [him] to sit down most of the time." (Id. at 67:22-25).

But Christie avers that "[d]uring the period of March 12, 2016 — June 3, 2016, there were no light-duty office jobs available that Mr. West could have performed temporarily." (Doc. # 36-8 at ¶ 10). So, "[c]reating a light-duty office job for Mr. West to perform temporarily would have placed an undue hardship on the Tampa Housing Authority." (Id. at ¶ 11). Additionally, Christie "believed that Mr. West was not qualified for such positions due to his deficient reading and writing skills." (Id. at ¶ 12).

Following his termination, West filed a grievance with Tampa Housing Authority. (Doc. # 36-1 at 59:6-61:15). During a meeting with Christie about his grievance, Christie told West that he had "already made up his mind that it doesn't matter, [and that West was] not getting [his] job back." (Id. at 59:18-19).

West continued to litigate his workers' compensation claim. During his deposition, West admitted he did not "have

any facts to support that" he was fired in retaliation for filing a workers' compensation claim. (Id. at 68:5-8).

On June 27, 2016, Dr. Herscovici amended West's work restrictions. (Doc. # 36-3 at 6). He marked that West had to be sedentary until July 11, 2016, as to the following activities: climbing, grasping, kneeling, lifting from floor to the waist, lifting from the waist to overhead, and pulling. (Id.). That doctor's report states that West would have "[n]o functional limitations" as of July 11, 2016. (Id.). Then, on August 15, 2016, Dr. Herscovici found that West had reached "maximum medical improvement" and gave West a "0% impairment rating." (Doc. # 36-4 at 2).

On September 7, 2016, West sent a letter to Tampa Housing Authority. (Doc. # 36-7). That letter stated: "I would like to inform you that I have been released back to work full duty and I would like to get my job back after working for your company for almost 30 years." (Id.). But, as of October of 2017, West reported to another doctor that "he has significant pain and swelling in his ankle whenever he tries to use it and that he is not improved. He has difficulty with standing and squatting which again produces pain and swelling of his ankle." (Doc. # 36-4 at 2).

Tampa Housing Authority did not rehire West, and West's workers' compensation case is still ongoing. (Doc. # 36-1 at 61:16-62:17).

West initiated this action in state court on December 1, 2017, asserting claims under the Americans with Disabilities Act ("ADA"), the Florida Civil Rights Act ("FCRA"), and Section 440.205, Florida Statutes. (Doc. # 2). Tampa Housing Authority removed the case to this Court on January 5, 2018. (Doc. # 1). Then, Tampa Housing Authority filed its Answer on January 12, 2018. (Doc. # 7). The parties underwent discovery. They mediated on August 23, 2018, but met an impasse. (Doc. # 30).

Now, Tampa Housing Authority moves for summary judgment. (Doc. # 37). West has responded (Doc. # 39), and Tampa Housing Authority has replied, (Doc. # 41). The Motion is ripe for review.

## II.  __Legal Standard__

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude

a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to

be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

Tampa Housing Authority argues that West cannot present a genuine issue of material fact as to any of his claims. The Court will address West's disability discrimination claims and workers' compensation retaliation claim separately.

### A. **Disability Discrimination Claims**

Regarding Count I, West asserts that Tampa Housing Authority violated the ADA by allegedly failing to "offer[] any reasonable accommodations despite [West's] being able to perform the essential functions of his job" and "terminat[ing] [West] because [it] knew or perceived that

[West] was disabled." (Doc. # 2 at 3-5). In Count II, which is labelled as an FCRA claim, West merely asserts that Tampa Housing Authority violated Section 440.205, Florida Statutes, by terminating him because "of his having filed or attempted to file a valid claim for compensation and benefits under the Workers' Compensation Law." (Id. at 6-7). So, it does not appear Count II is actually a disability discrimination claim under the FCRA.

Regardless, ADA and FCRA disability discrimination claims are evaluated under the same framework. See Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007)("[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims. We therefore consider both claims together." (citation omitted)). Therefore, to the extent Count II is actually attempting to assert a claim for disability discrimination under the FCRA, the Court can address the ADA and FCRA claims together.

The ADA and the FCRA prohibit employers from discriminating against "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a). "[T]o establish a prima facie case of discrimination under the [Act], [the plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination

because of [his] disability." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

A "qualified individual" is a person who, with or without reasonable accommodations, is able to perform the essential functions of the job he holds or desires. 42 U.S.C. § 12111(8). "[A] plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." D'Angelo v. ConAgra Foods, 422 F.3d 1220, 1229 (11th Cir. 2005)(quotation marks omitted). "And even a 'relative[ly] infrequen[t]' inability to perform a job's essential functions is enough to render a plaintiff not a 'qualified individual' under the ADA." Billups v. Emerald Coast Utils. Auth., 714 F. App'x 929, 936 (11th Cir. 2017)(quoting Holbrook v. City of Alpharetta, 112 F.3d 1522, 1528 (11th Cir. 1997)).

"An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability — unless doing so would impose undue hardship on the employer." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)(quoting Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000)). Still, "the duty

12

to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." <u>Gaston v. Bellingrath Gardens & Home, Inc.</u>, 167 F.3d 1361, 1363 (11th Cir. 1999). And "an employer is not required to accommodate an employee in any manner in which that employee desires." <u>Terrell v. USAir</u>, 132 F.3d 621, 626 (11th Cir. 1998)(citation omitted). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." <u>Lucas</u>, 257 F.3d at 1255-56.

Indeed, "[a]n accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." <u>Id.</u> at 1255. "An accommodation that simply eliminates, rather than enables the disabled employee to perform, an essential function of their job is 'per se unreasonable.'" <u>Leme v. S. Baptist Hosp. of Fla., Inc.</u>, 248 F. Supp. 3d 1319, 1345 (M.D. Fla. 2017). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." <u>Dickerson v. Sec'y, Dep't of Veterans Affairs Agency</u>, 489 F. App'x 358, 360 (11th Cir. 2012)(quoting 29 C.F.R. § 1630.2(n)(1)). "Whether a function is essential is evaluated on a case-by-

case basis by examining a number of factors." Id. (citation omitted). "Consideration is given to the employer's judgment as to what functions of a job are essential." Id.

"[T]he ADA may require the employer to 'reassign,' i.e., transfer, the disabled employee to a vacant position as a reasonable accommodation. The reassignment duty, however, does not require the employer to bump another employee from a position in order to accommodate a disabled employee. Nor does it require the employer to promote a disabled employee." Lucas, 257 F.3d at 1256 (citations omitted).

Tampa Housing Authority argues that West has not shown that he was a qualified individual or that he was subjected to unlawful discrimination. (Doc. # 37 at 7-15). It emphasizes that West, in his deposition, insisted a reasonable accommodation would have been a temporary sedentary assignment in an office. (Id. at 10). But West nevertheless acknowledged that he would not have been able to perform the job of Maintenance Mechanic I while sitting down at a desk and was not otherwise able to perform many of the physical tasks that were part of the Maintenance Mechanic I position. (Id. at 11; Doc. # 36-1 at 30:7-17, 64:23-65:17). Thus, according to Tampa Housing Authority, West was not a qualified individual.

Furthermore, Tampa Housing Authority argues that West has failed to show that there was an office job available at that time. (Doc. # 37 at 12). Indeed, Tampa Housing Authority emphasizes its evidence that no such office positions existed at that time and West would not have been qualified for such position regardless. (Doc. # 36-8 at ¶¶ 10-12). Therefore, Tampa Housing Authority reasons, West has failed to identify a reasonable accommodation. (Doc. # 37 at 11-12).

In his response, West argues that a reasonable accommodation would have been "an extended leave of absence of a limited period of time." (Doc. # 39 at 8). West insists such leave of absence "would have enabled him to perform the essential functions of his job." (Id. at 9). He emphasizes that he "was released full duty by Dr. Herscovici in July and again in August" of 2016. (Id.; Doc. # 36-3 at 6; Doc. # 36-4 at 2).

True, "a person, totally disabled at one point, may be considered a qualified individual if the allowance of a leave of absence or possible reassignment would provide them the opportunity to resume working at a later date." Dockery v. N. Shore Med. Ctr., 909 F. Supp. 1550, 1556 (S.D. Fla. 1995). But a leave of absence "is unreasonable if it would only allow an employee to 'work at some uncertain point in the future.'"

<u>Billups</u>, 714 F. App'x at 935 (citation omitted); <u>see</u> <u>also</u> <u>Wood v. Green</u>, 323 F.3d 1309, 1314 (11th Cir. 2003)("While a leave of absence might be a reasonable accommodation in some cases, Wood was requesting an indefinite leave of absence. Wood might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence. Wood was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future — at some indefinite time.").

Here, it is undisputed that West did not provide a definite date on which he could have returned to work when he requested an extended leave. (Doc. # 36-8 at 5). So, when West made his request for an extended leave, he was proposing an indefinite leave of absence until whenever his injury fully healed. <u>See</u> <u>Billups</u>, 714 F. App'x at 934 ("[A]n employer does not violate the ADA by refusing to grant an employee a period of time in which to cure his disabilities where the employee sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions." (citation and quotation marks omitted)). While West bemoans the "lack of interactive discussion" about reasonable accommodations and Tampa Housing Authority's

"point blank decision to terminate him without even an attempt to discuss with the treating medical provider when [West] would be able to return to work," he cannot escape the fact that he did not have an end date in sight when he requested an extended leave of absence. (Doc. # 39 at 8).

Furthermore, there is evidence that West would not have been able to perform the essential functions of his job for months after his termination in June of 2016. One doctor, Dr. Herscovici, found that West had reached "maximum medical improvement" and had a "0% impairment rating" as of August 15, 2016. (Doc. # 36-4 at 2). But, another of West's physicians reported in October of 2017 — over a year later — that West had not reached maximum medical improvement and still suffered "significant pain and swelling in his ankle whenever he trie[d] to use it." (Id.). Therefore, West's suggested reasonable accommodation — an extended leave for an indefinite period — was unreasonable and cannot support an ADA claim.

Finally, West argues that there is a genuine dispute of material fact "as to sedentary jobs that were open and available at the time of [] West's temporary disability status." (Doc. # 39 at 11). But West presents no evidence refuting Christie's affidavit stating that no sedentary

office positions were available. Indeed, West has presented no evidence at all in support of his response; instead, West relies solely on the materials submitted by Tampa Housing Authority in support of its Motion. The Court is mindful that "[t]he mere allegation of factual disputes found in Plaintiff's Response may not be taken into account by a Court in determining issues of fact to be resolved in a motion for summary judgment." Dockery, 909 F. Supp. at 1553.

Upon review of the record, the Court finds that there is no genuine issue of material fact as to West's disability discrimination claims under the ADA and the FCRA. The undisputed evidence establishes that West was not a qualified individual under the ADA because he was not able to perform the essential functions of his Maintenance Mechanic I position at the time of his termination. (Doc. # 36-1 at 30:7-17, 64:23-65:17). Nor has West identified a reasonable accommodation that he was denied. Tampa Housing Authority is entitled to summary judgment on these claims.

B.  **Workers' Compensation Retaliation**

In Count III, West asserts a claim under Section 440.205, Florida Statutes, for allegedly terminating his employment because of his "having filed or attempted to file a valid claim for compensation and benefits under the Workers'

Compensation Law, and/or by his retaining of an attorney to represent him in the workers' compensation case." (Doc. # 2 at 7-8).[1]

Under Section 440.205, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." But Section 440.205 "cannot be interpreted to prohibit the discharge of an employee for any reason once the employee has filed or pursued a workers' compensation claim." Billups, 714 F. App'x at 937 (quoting Perrich v. Climatrol, Inc., 523 So.2d 684, 685 (Fla. 3d DCA 1988)).

---

[1] Because the Court has granted summary judgment on the ADA claim, the Court recognizes that supplemental jurisdiction pursuant to 28 U.S.C. § 1367 supplies the only remaining basis for jurisdiction over the workers' compensation retaliation claim. "The dismissal of [a plaintiff's] underlying federal question claim does not deprive the Court of supplemental jurisdiction over the remaining state law claims." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). "Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction, but [the Court] is not required to dismiss the case." Id. Here, the Court decides it is appropriate to continue exercising supplemental jurisdiction over the workers' compensation retaliation claim.

"Retaliation claims brought pursuant to [Section] 440.205 require a plaintiff to show the following: (1) he engaged in protected expression; (2) he suffered an adverse employment action; (3) a causal connection exists between the expression and the adverse action." Id. "As to the third element, for purposes of establishing a prima facie case, the plaintiff must show that the protected activity and the adverse action are not completely unrelated, which can be satisfied through close temporal proximity." Id. (citation and quotation marks omitted).

"Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to present a legitimate reason for its conduct." Juback v. Michaels Stores, Inc., 696 F. App'x 959, 960 (11th Cir. 2017). "If the employer does so, the plaintiff then bears the burden of proving by a preponderance of the evidence that the defendant's proffered reason was merely a pretext for the prohibited, retaliatory decision." Id.

Tampa Housing Authority argues this claim fails because West cannot establish a causal connection between his workers' compensation claim and his termination. (Doc. # 37 at 15-16). Tampa Housing authority insists that West has no evidence that he was retaliated against. (Id. at 15). It

emphasizes that, during his deposition, West admitted he did not "have any facts to support that" he was fired in retaliation for filing a workers' compensation claim. (Doc. # 36-1 at 68:5-8).

In his response, West insists there is a genuine issue of material fact regarding whether there is a causal connection between his workers' compensation claim and his termination. (Doc. # 39 at 13-15). But West does not provide any record evidence supporting a connection between his termination and the initiation of his workers' compensation claim. Indeed, West admits he does not have evidence such as "an email or document that explicitly states that he was being terminated and/or not offered alternative employment because he was pursuing a workers' compensation case." (Id. at 12). Instead, West focuses on the temporal proximity between the workers' compensation claim and his termination to establish causation. (Id. at 14).

"But mere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)(citation omitted). Here, the workers' compensation claim was initiated soon after West's injury in mid-March of 2016, and his termination did not occur until June 10, 2016. This is not sufficient to establish a prima

facie case of retaliation. See Id. ("A three to four month disparity between the statutorily protected [activity] and the adverse employment action is not enough."); see also Anderson v. Ga.-Pac. Wood Prod., LLC, 942 F. Supp. 2d 1195, 1211 (M.D. Ala. 2013)("The record shows that Georgia-Pacific did not take any alleged adverse action against Anderson until early June 2008, almost three months after Anderson filed his EEOC charge on March 12, 2008. The Court concludes that this temporal proximity, without more, is insufficient to establish the causal link of Anderson's prima facie case.").

Even if the approximately three months between the workers' compensation claim and West's termination could establish a prima facie case, Tampa Housing Authority has shown a legitimate and nondiscriminatory reason for terminating West. According to Tampa Housing Authority, West's "employment was terminated because he was unable to return to work at the end of his FMLA leave, and failed to provide [Tampa Housing Authority] with a date certain by when he would return to his job." (Doc. # 37 at 15). Tampa Housing Authority has presented the May 27, 2016 letter, in which it warned West that he would be terminated if he did not return to work on June 6, 2016, or successfully apply for an extended medical leave. (Doc. # 36-6). West's request for an extended

leave was incomplete, as it did not list a date certain when he would return, and so was rejected. (Doc. # 36-8 at ¶¶ 7-8). Finally, there is no dispute that West did not return to work on June 6, 2016, resulting in his termination on June 10, 2016. (Id. at ¶ 9).

This is a legitimate reason for West's termination. See Billups, 714 F. App'x at 937 (finding that defendant employer had a legitimate reason for terminating plaintiff where "the record evidence is undisputed that, at the time of his termination, and following an extended period of medical leave, [plaintiff] simply was unable to perform the essential functions of his job"). And West has not presented any evidence of pretext to rebut this legitimate reason. Even taking the facts in the light most favorable to West, the response's emphasis on Tampa Housing Authority's decision to fire West, a nearly 30-year employee, for not returning to work immediately after his FMLA leave does not establish pretext. (Doc. # 39 at 12-13). Therefore, Tampa Housing Authority is entitled to summary judgment on the workers' compensation retaliation claim.

## III. **Conclusion**

Because no genuine issue of material fact exists as to West's disability discrimination and workers' compensation

retaliation claims, Tampa Housing Authority is entitled to summary judgment on all counts of the Complaint.

Accordingly, it is now

**ORDERED, ADJUDGED**, and **DECREED:**

(1) Defendant Tampa Housing Authority Development Corporation's Motion for Summary Judgment (Doc. # 37) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Tampa Housing Authority and against Plaintiff Michael West on all counts of the Complaint.

(3) Thereafter, the Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of October, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE